


Bk: 40424 Pg: 108  Doc: MTG
Page: 1 of 15  12/28/2006 01:54 PM



**EXHIBIT**

## MORTGAGE AND SECURITY AGREEMENT

<div style="margin-left:2em; color:#444">Property Address:  8 Condon Way, Hopedale, MA 01747</div>

| | |
|---|---|
| **BORROWER** | **ARCADIA ENTERPRISES, INC.** *a corporation organized under the provisions of the Commonwealth of Massachusetts,* **Mortgagor;** |
| **LENDER** | **SCITUATE FEDERAL SAVINGS BANK**, *organized and existing under the laws of the United States of America and whose address is 72 Front Street, Scituate, MA 02066.* |
| **PRINCIPAL** | **$420,000.00** |
| **NOTE** | *That certain* **NOTE** *dated December 28, 2006 from the* BORROWER *as maker, to the* LENDER, *as payee, in the amount stated herein as* **PRINCIPAL.** |
| **GUARANTY** | *N/A (If the Mortgage secures a Guaranty)* |
| **LOAN DOCUMENTS** | *The NOTE (the Guaranty), as it may be amended, extended or renewed and any mortgage, security agreement, assignment of leases and rents, loan agreement or other agreements heretofore now or hereafter executed to secure, or entered into otherwise in connection with, the NOTE (the Guaranty), including without limitation this Mortgage and Security Agreement.* |
| **MORTGAGED PROPER** | *The land being shown as 8 Condon Way, Hopedale, Worcester County, Commonwealth of Massachusetts 02359 as described in "Exhibit A" attached hereto, together with all improvements now or hereafter situated thereon and all fixtures, as more completely enumerated below.* |
| **OBLIGATIONS** | *Payment of the PRINCIPAL, with INTEREST and all other charges evidenced by or becoming due and payable to the LENDER under the NOTE (the Guaranty) this Mortgage and Security Agreement or any other Loan Documents; payment and performance of all obligations, covenants and agreements of the BORROWER to the LENDER contained in the NOTE (the Guaranty) and all other Loan Documents and payment and performance of all other obligations of the Borrower to the Lender, now existing or hereafter arising, direct or indirect, absolute or contingent.* |

Return to:  Robert E. Galvin, Esquire
            10 Enterprise Street, Suite 3
            Duxbury, MA 02332

15



1

## 1. GRANT OF MORTGAGE

For valuable consideration paid, the BORROWER grants to the LENDER, its successors and or assigns, with offices at 72 FRONT STREET SCITUATE, MASSACHUSETTS, 02066, WITH THE MORTGAGE COVENANTS, the Mortgaged Property, including all the tenements, hereditament and appurtenances and the rents, income and profits thereof, to secure the OBLIGATIONS of the BORROWER to the LENDER.

The MORTGAGED PROPERTY includes as fixtures all articles now or hereafter located on the MORTGAGED PROPERTY or used in connection therewith insofar as the same are or can, by agreement of the parties, be made a part of the realty, including but not limited to: portable or sectional buildings; bathroom, plumbing, heating, lighting, refrigerating, ice making, ventilating and air conditioning apparatus, fixtures and equipment; garbage incinerators and receptacles; elevators and elevator machinery; boilers, stoves; tanks; motors; sprinkler and fire extinguishing systems; door bell and alarm systems; window shades, screens, awnings, screen doors, storm and other detachable windows and doors; mantels, built-in cases and counters; and all other fixtures whether or not included in the foregoing enumeration.

## 2. SECURITY AGREEMENT

For valuable consideration paid the BORROWER hereby grants to the LENDER a security interest under Article 9 of the MASSACHUSETTS UNIFORM COMMERCIAL CODE in all tangible personal property now owned or hereafter acquired by the BORROWER and used in any way in connection with the operation of the MORTGAGED PROPERTY, and also in all contract rights, plans and specifications, permits, approvals and general intangibles now or hereafter owned with respect to the MORTGAGED PROPERTY, and all proceeds from the foregoing (all such personal property being referred to collectively as the "Personal Property") to secure the OBLIGATIONS. The LENDER shall have all of the rights and remedies of a secured party under the MASSACHUSETTS UNIFORM COMMERCIAL CODE. All covenants and obligations of the BORROWER in this Mortgage and Security Agreement shall be deemed to apply to the Personal Property to the extent applicable, whether or not expressly referred to herein.

There is excluded from the MORTGAGED PROPERTY any trade fixtures, and from the Personal Property any personal property, owned by tenants or occupants other than the BORROWER or affiliates of the BORROWER who occupy all or a portion of the MORTGAGED PROPERTY pursuant to leases or occupancy agreements.

### 3. BORROWER'S PROMISES AND OBLIGATIONS

The BORROWER covenants and agrees with the LENDER as follows:

A. **A PROMISE TO PAY AND PERFORM.** The BORROWER will pay the PRINCIPAL AND INTEREST thereon and other charges due under the Loan Documents as the same shall become due and payable, and will pay and perform all of the Obligations. The BORROWER shall, with reasonable promptness, but in any event within five (5) business days after the BORROWER has Knowledge thereof, notify the LENDER in writing of the occurrence of any act, event or condition which constitutes or (except for monetary obligations not yet due) which, after notice or passage of time or both, would constitute a default hereunder or under any other Loan Document.

B. **TITLE.** The BORROWER is the owner of the Mortgaged Property and the Personal Property and has good right, full power and lawful authority to grant a mortgage and security interest in them in them in the manner aforesaid. The Mortgaged Property and the Personal Property are free and clear of all encumbrances except as otherwise stated in this Mortgage and Security Agreement. The BORROWER will make any further assurances of title that the LENDER may require. The BORROWER shall notify the LENDER of, and will defend the Mortgaged Property and Personal Property against, all claims and demands of all persons at any time claiming the same or any interest therein. The BORROWER agrees to execute and deliver on demand such other mortgages, security agreements, financing statements and other instruments as the LENDER may reasonably request in order to perfect its mortgage or security interest or impose the lien of either more specifically upon any of the Mortgaged Property and the Personal Property. The BORROWER agrees to perform and observe and not violate nor suffer the violation of any covenants, restrictions or other agreements of record against the Mortgaged Property.

C. **PROMISE TO MAINTAIN THE PROPERTY.** The BORROWER will protect and maintain (or cause to be protected and maintained) in good order, repair and condition at all times (damage by casualty expressly not excepted): (i) the Mortgaged Property, including without limitation all fixtures, utility services, parking areas, access roads and landscaping in existence from time to time and (ii) all Personal Property now or hereafter acquired and used in connection with the operation of the Mortgaged Property, promptly replacing and Personal Property which may become lost, destroyed or unsuitable for use with other property of similar character.

The BORROWER will not commit or suffer and demolition, removal or material alteration of any of the Mortgaged Property or the Personal Property without the LENDERS prior written consent or commit of suffer any strip or waste of the Mortgaged Property or the Personal Property or violation of law, rule, regulation, ordinance, license or permit, or the requirements of any licensing or insuring authority, affecting the Mortgaged Property or any business conducted thereon or the Personal Property.

D. **INSURANCE.**    The BORROWER will keep the buildings and all other improvements comprising the Mortgaged Property insured on an "all-risk" basis, and with Difference in Conditions insurance, with a valuation defined as 100% replacement cost, with an agreed amount endorsement and with endorsements for increased cost of construction and demolition and contingent liability and such other forms of coverage with deductible limits and endorsements, all as required by the LENDER from time to time.   The BORROWER shall also maintain public liability insurance with limits reasonably acceptable to the LENDER and rent-loss insurance in the amount equal to one years rent under the leases (if any) of the Mortgaged Property in effect from time to time.   The BORROWER shall maintain, if the buildings and other improvements or any part thereof are located in a flood prone, flood risk of flood hazard area as designated pursuant to the Federal Flood Disaster Protection Act of 1973 as amended and regulations thereunder, a policy of flood insurance issued under and in compliance with the Act and regulations in an amount determined from time to time by the LENDER.

All policies of insurance shall be subject to the LENDER'S reasonable review and approval, shall by written by insurers authorized to conduct business in Massachusetts and approved by the LENDER and shall by first payable in case of loss to the LENDER under the standard New England Lender Clause, so-called, or its equivalent, and as to personal property coverage shall name the LENDER as an additional insured party. The original of all policies of insurance (or certificates thereof issued by the insurer in form, content and manner of execution satisfactory to the LENDER) shall by delivered to the LENDER forthwith, and the BORROWER shall deliver to the LENDER a new policy (or such a certificate) as replacement for an expiring policy (or such a certificate) at least thirty (30) days before the date of expiration.   The BORROWER hereby irrevocably appoints the LENDER its true and lawful attorney-in-fact, with full power of substitution, to assign any policy in the event of the foreclosure of this Mortgage and Security Agreement and to deal with the insurer in all respects that the BORROWER might do.

E.    **CASUALTY.**  The proceeds of any casualty insurance and rent loss insurance shall, at the LENDER'S election be applied to or toward the obligations secured hereby in such order as the LENDER may determine (in which event the BORROWER shall be relieved of the obligation in Section 3 (c) of this Mortgage and Security Agreement to the extent of the repair of that part of the Mortgaged Property damaged by the hazard with respect to which insurance is so applied).

If the LENDER requires repair of that part of the Mortgaged Property so damaged by such insured hazard, the LENDER shall release to the BORROWER insurance proceeds paid to it for such repair or restoration upon such conditions as the LENDER may determine.  Notwithstanding anything in this Section 3 (E) to the contrary, if the insurer denies liability to the BORROWER, the BORROWER shall not be relieved of any obligation under Section 3 (C) of this Mortgage and Security Agreement, whether or not any proceeds of insurance are applied to any of the Obligations.

4

F.   **EMINENT DOMAIN.**   *Awards of damages for any condemnation for public use of or injury to the Mortgaged Property and Personal Property shall be paid to the LENDER and, at the LENDER'S election shall be applied to the Principal, interest thereon or the other Obligations in such order as the LENDER may determine. At the LENDER'S election, such awards shall be released to the BORROWER on such conditions as the LENDER may determine to be applied to restoration of that part of the Mortgaged Property which remains, but not more than such portion of such awards as may be required to restore such damaged or injured property shall be so applied; and any balance shall be applied by the LENDER to the Principal, interest thereon, or the other Obligations in such order as the LENDER may determine.*

G.   **TRANSFER.** *The BORROWER will not sell, further encumber or otherwise transfer the Mortgaged Property or the Personal Property or any part thereof or any interest therein (or any ownership interest in the entity the comprising the BORROWER), or enter into any new leases of all or any portion(s) of the Mortgaged Property, or amend or modify any existing lease(s), without first securing in each instance LENDER'S written consent, which consent may be withheld in the LENDER'S discretion.*

*The LENDER may, without notice to any person, deal with any successor in interest to the BORROWER regarding this Mortgage and Security Agreement and the Obligations secured hereby in all respects as the LENDER might deal with the BORROWER without in any way affecting the BORROWER'S liability hereunder or the Obligations secured hereby; and no sale of all or any part of the Mortgaged Property or the Personal Property, nor any forbearance by the LENDER, nor any extension by the LENDER of the time for payment and performance of the Obligations hereby secured, shall operate to release, discharge, modify, change or affect the liability of the BORROWER or any other predecessor in interest to the equity owner at the time of such sale, forbearance or extension.*

H.   **TAXES.** *The BORROWER will pay before delinquent, and before any penalty for nonpayment attaches thereto, all taxes, assessments and charges of every nature to whomever assessed that may now or hereafter be levied or assessed upon the Mortgaged Property or the Personal Property or any part of either, or upon the rents, income or profits thereof or upon the lien or estate hereby created, whether any or all of said taxes, assessments or charges by levied directly or indirectly or as excise taxes or as income taxes.*

*At the option of the LENDER, the BORROWER shall from time to time pay to the LENDER on dates on which installments of principal or interest are payable such amount as the LENDER from time to time estimates are necessary to create and maintain and reserve fund from which to pay before the same become due all taxes, assessments, and other charges on or against the Mortgaged Property and the Personal Property. Such payments may be mingled with the general funds of the LENDER, who shall have no obligation to pay interest thereon except as required by law. Payments from the reserved fund for payment of such taxes, assessments and charges, and any lien which may arise*

5

*by reason thereof may be made by the LENDER at its discretion even though subsequent owners of the Mortgaged Property and the Personal Property may benefit thereby. If there is any event of any default under the terms of this Mortgage and Security Agreement or under any of the other Obligations, any part or all of the reserve fund may be applied, at the LENDER'S election, to pay any part of the Obligations not paid or performed by the BORROWER as required by the Loan Documents. In refunding any part of the reserve fund, the LENDER may deal with the whomever is represented to be owner(s) of the Mortgaged Property and the Personal Property at that time.*

*If any law is hereafter enacted deducting from the value of the Mortgaged Property or the Personal Property for the purpose of taxation any mortgage or security interest thereon, or changing in any way the laws now in force for the taxation of the mortgages or debts secured by mortgages for state or local purposes; or the manner of collection of any such taxes, so as to materially and adversely affect, in the LENDER'S opinion, the LENDER'S rights, the notwithstanding compliance by the BORROWER with all other provisions hereof, the whole of the indebtedness and any other monetary obligations hereby secured shall, at the LENDER'S election, become due and payable thirty (30) days after written notice to the BORROWER requiring payment of the indebtedness; provided, however, that the LENDER'S exercise of such election shall be ineffective if the BORROWER is permitted by law to pay the whole of such tax, and if the BORROWER, prior to the expiration of said thirty (30) day period, does pay all of such tax and agrees to pay any such tax thereafter levied with respect to the Mortgaged Property and the Personal Property.*

*I.   FINANCIAL STATEMENTS.   The BORROWER shall within ninety (90) days following the end of the BORROWER'S fiscal year deliver to the LENDER in form reasonably acceptable to LENDER: (i) an income and expense statement reflecting the operation of the Mortgaged Property for such fiscal year; (ii) a current rent roll of the Mortgaged Property; and (iii) the past year's annual financial statements, certified or reviewed with a review report thereon by certified public accountants satisfactory to LENDER, for each BORROWER, endorser and guarantor of the Obligations.*

*The failure to deliver such reports, rent rolls and statements shall be a default under this Mortgage and Security Agreement and the Loan Documents secured hereby.*

*J.   NO OTHER LIENS.   The BORROWER (a) will pay (before such prior lien may attach) all such sums which, if unpaid, may result in a lien on any Mortgaged Property or Personal Property prior to the lien of the Mortgage and Security Agreement and (b) will pay all sums which, if unpaid, may result in conferring upon a tenant of all or any part of the Mortgaged Property a right to recover such sums as prepaid rent. Without limiting the foregoing, BORROWER shall pay all sums and take all actions as may be required to avoid or discharge the imposition of any lien on the Mortgaged Property under Mass. G.L. c.21E and all amendments thereto and all regulations promulgate thereunder, and the BORROWER shall indemnify and save the LENDER harmless from all loss, claims and liabilities incurred or suffered by the*

LENDER by virtue of the provisions thereof or of Mass. G.L. c.21C or other similar state or federal law.

K.    **LEASES.**    The BORROWER covenants with the LENDER: (i) to observe and perform all the obligations imposed upon the lessor under each lease or other occupancy agreement affecting the Mortgaged Property (if any) and not to do or permit to be done anything to impair the security thereof; (ii) not to collect any of the rent, income and profits arising or occurring under any leases or occupancy agreements or from the Mortgaged Property more that one month in advance of the time when the same shall become due; (iii) not to execute any other assignment of lessor's interest in any leases or accruing from the Mortgaged Property; (iv) not to reduce the rent or the term, or otherwise alter, modify of change the terms or conditions of any lease or occupancy agreements so as to impair their value as security, or cancel or terminate and lease to impair their value as security, or cancel or terminate and lease or accept or surrender thereof or enter into any new lease of any part of the Mortgaged Property, without the LENDER'S prior to written consent on each occasion.

Upon the LENDER'S request, the BORROWER will assign to the LENDER, as security for the Obligations, the lessor's interests in any or all leases now or hereafter in effect with respect to all or any part of the Mortgaged Property, and the BORROWER'S interests in all agreements, contracts, licenses and permits nor or hereafter outstanding affecting the Mortgaged Property and the Personal Property. Such assignments shall be made by instruments in form satisfactory to the LENDER and authorizing the LENDER, in the event of foreclosure, to sell and assign all the BORROWER'S interest therein to the purchaser at foreclosure, but no such assignment shall be construed as a consent by the LENDER to any lease, agreement, contract license or permit so assigned, or to impose upon the LENDER any obligations with respect thereto. BORROWER hereby irrevocably appoints the LENDER its true and lawful attorney-in-fact, with full power of substitution, to execute, acknowledge and deliver any such assignment on behalf of the BORROWER which the BORROWER fails or refuses to do.

L.    **FURTHER ASSURANCES.**    The BORROWER will promptly cause the Mortgage and Security Agreement and all financing statements which may be required to perfect the security interest granted hereby to be recorded and re-recorded, registered and re-registered, filed and re-filed at such times and places, and do all such other acts as may be required (or believed by the LENDER to be required) by law to create, preserve or protect the priority of this Mortgage and Security Agreement and any lien created hereby upon the Mortgaged Property and the Personal Property or any part of either. The BORROWER hereby irrevocably appoints the LENDER its true and lawful attorney-in-fact, with full power of substitution, to execute, acknowledge deliver and do any such things on behalf of the BORROWER which the BORROWER fails or refuses to do.

## M.   HAZARDOUS MATERIALS OR OIL.

(a)   The BORROWER represents that neither the BORROWER nor any person for whose conduct the BORROWER is responsible ever:

(i) owned, occupied, or operated a site or vessel on which any hazardous material or oil was or is stored (except if such storage was or is in compliance with all laws, ordinances and regulations pertaining thereto) transported, or disposed of (the terms site, vessel, hazardous material and oil respectively being used in this section with the meaning given those terms in Massachusetts General Laws, Chapter 21E, as amended);

(ii)   directly or indirectly transported, or arranged for the transport, of any hazardous material or oil;

(iii)   caused or was legally responsible for any release, or threat of release of any hazardous material or oil;

(iv)   received notification from any federal, state or other governmental authority of : any potential, known or threat of release of any hazardous material or oil on or from the Mortgaged Property or any other site or vessel owned, occupied, or operated either by the BORROWER OR any person for whose conduct the BORROWER is responsible or whose liability may result in a lien on the Mortgaged Property; or the incurrence of any expenses or loss by such governmental authority; or by any other person, in connection with the assessment, containment, or removal of any release, or threat of release, or any hazardous material or oil from the Mortgaged Property or any such site or vessel.

(b)   The BORROWER represents and warrants that no hazardous material or oil was ever, or is now, stored on (except in compliance with all laws, ordinances and regulations pertaining thereto), transported, or disposed of on the Mortgaged Property.

(c)   The BORROWER shall:

(i)   not store (except in compliance with all laws, ordinances, and regulations pertaining thereto), or dispose of any hazardous material or oil on the Mortgaged Property, or on any other site or vessel owned, occupied or operated either by the BORROWER, or by any person for whose conduct the BORROWER is responsible;

(ii)   neither directly nor indirectly transport or arrange for the transport of any hazardous material or oil;

(iii)   take all such action, including, without limitation, the conducting of engineering tests (at the sole expense of the BORROWER) (x) to confirm

8

that no hazardous material or oil is or ever was stored on the Mortgaged Property; (y) to assess, contain and remove any such hazardous material or oil on the Mortgaged Property, and (z) to qualify for any insurance program of safe harbor which may be available under said chapter 21E, as amended, and

(iv) provide the LENDER with written notice: (x) upon the BORROWER'S obtaining knowledge of any potential or known release, or threat of release, of any hazardous material or oil at or from the Mortgaged Property, or any other site or vessel owned, occupied or operated by the BORROWER or by any person for whose conduct the BORROWER is responsible or whose liability may result in a lien on the Mortgaged Property; (y) upon the BORROWER'S receipt of any notice to such effect from any federal, state or other governmental authority; and (z) upon the BORROWER'S obtaining knowledge of any incurrences of any expense or loss by such governmental authority in connection with the assessment, containment, or removal of any hazardous material or oil for which expense or loss the BORROWER may be liable or for which expense a lien may be imposed on the Mortgaged Property.

(d) The BORROWER shall indemnify, defend, and hold the Bank harmless of and from any claim brought or threatened against the Bank by the BORROWER, any guarantor or endorser of the obligations or any governmental agency or authority or any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the presence of hazardous material or oil on the Mortgaged Property, the release of hazardous materials or oil on or from the Mortgaged Property, the failure by the BORROWER to comply with the terms and provisions hereof (each of which may be defended, compromised, settled, or pursued by the LENDER with counsel of the LENDER'S selection, but at the expense of the BORROWER).   The within indemnification shall survive payment of the liabilities and/or any termination, release or discharges executed by the LENDER in favor of the BORROWER.

(e)   The LENDER shall, at all times, and at the sole cost and expense of BORROWER, have the right (but not the obligation) to: (i) independently establish to its satisfaction the existence or non-existence of any fact or facts with respect to hazardous material or oil on the Mortgaged Property or surrounding areas; (ii) enter upon the Mortgaged property and perform such investigations and tests as the LENDER may deem appropriate; and (iii) take any action, or require BORROWER to take any action, necessary to   (x) remove any hazardous material from the Mortgaged Property and surrounding areas, if required by any law, ordinance or regulations pertaining thereto, and (y) take necessary precautions to protect against the release of hazardous material on the Mortgaged Property and surrounding areas.

## 4. BORROWER'S RIGHT TO CONTEST

The BORROWER shall have the right to contest by appropriate legal proceedings, but without cost or expense to the LENDER, the validity of any laws ordinance, orders, rules or regulations affecting the Mortgaged Property or the Personal Property if compliance may be so contested without imposition of any charge, lien or liability against the Mortgaged Property or the Personal Property and without the loss or suspension of any license, right or permit with respect to the Mortgaged Property or the Personal Property, and the BORROWER may postpone compliance therewith until the completion of any such proceedings, provided they shall by promptly commenced and prosecuted to completion with due diligence; but if any charge, lien or liability is incurred, or if the LENDER'S judgement delay in compliance is likely to impair the value of the Mortgaged Property or the Personal Property as security for the Obligations, the BORROWER may make the contest and delay compliance only if the LENDER is furnished with security satisfactory to it against any loss or injury which in the LENDER'S judgement could occur by reason of such noncompliance or delay.

## 5. LENDER"S RIGHT TO ACT

If any representation or warranty made by BORROWER to LENDER is false or if the BORROWER shall neglect of refuse (a) to maintain and keep in good repair the Mortgaged Property and the Personal Property as required by this Mortgage and Security Agreement, or (b) to maintain and pay when due the premiums for all insurance required by this Mortgage and Security Agreement (c) to pay and discharge all taxes, assessments and charges of every nature to whomever assessed, as required by the Mortgage and Security Agreement, or (d) to pay the sums required to be paid in Section 3 (J), or (e) to pay, perform or otherwise satisfy any other terms or condition of this Mortgage and Security Agreement or any other Loan Document, the LENDER, at its selection, may cause such repairs or replacements to be made, obtain such insurance, pay said taxes, assessments and charges, incur and pay reasonable amounts in protecting its rights hereunder and the security hereby granted, pay any balance due under any mortgage, security interest or conditional agreement of sale of any of the Mortgaged Property or the Personal Property, and pay any amounts as the LENDER deems necessary or appropriate to satisfy any term or condition of the Mortgage and Security Agreement which the BORROWER shall have failed to satisfy, and remedy any breach of such term or condition; and any amounts or expenses so paid or incurred, together with interest thereon from the date of payment by the LENDER, at the highest rate provided in any of the Obligations for amounts due after maturity, shall be immediately due and payable by the BORROWER to the LENDER and until paid shall be secured hereby equally and ratably with, and the same may be collected as part of, the principal debt secured by this Mortgage and Security Agreement in any suit hereon or on any of the obligations. No payment by the LENDER shall relieve the BORROWER from any default hereunder or impair any right or remedy of the LENDER consequent thereon.

## 6. *DEFAULT, FORECLOSURE AND OTHER REMEDIES*

The entire indebtedness secured hereby and all other indebtedness or obligations owed by BORROWER to LENDER shall become immediately due and payable, at the LENDER'S election, without notice: (i) if there is a default in any payment due under any of the Loan Documents and such default is not cured within the grace period, if any, provided for in such Loan Document, or (ii) if any default in the performance or observance of any other term, condition, covenant or agreement of, or contained in, any Loan Document or any other agreement executed in connection with any of the Loan Documents occurs, and any such default is not cured within any applicable grace period stated therein, (iii) if by order of a court having jurisdiction a receiver or liquidator or trustee of the BORROWER or of any guarantor or endorser of any Loan Document is appointed, or if a petition in bankruptcy or to reorganize the BORROWER, such guarantor or endorser pursuant to the Federal Bankruptcy Code or any other similar statute, as now or hereafter in effect is filed, or the BORROWER, such guarantor or endorser files a petition in voluntary bankruptcy or reorganization or if (without limitation of the generality of the foregoing) the BORROWER, such guarantor, or endorser files a petition for an arrangement reorganization or bankruptcy pursuant to any law providing for the relief of debtors, or if the BORROWER, such guarantor or endorser institutes any proceeding for its dissolution or liquidation, or makes an assignment or mortgage for the benefit of creditors generally or admits in writing inability to pay the BORROWER'S, such BORROWER'S, guarantor's or endorser's debts generally as they become due, or consents to the appointment of a receiver or trustee or liquidator. *Provided, however,* in the event of an involuntary proceeding in which no order of relief has been entered, there shall be a thirty (30) day grace period during which the default may be cured by the final dismissal of such proceedings.

The BORROWER authorizes the LENDER, in addition to all other rights granted by law or by this MORTGAGE and SECURITY AGREEMENT, whenever and as long as any default hereunder exists, and without notice, to enter and take possession of all or any part of the Mortgaged Property and the Personal Property and to use, operate, construct, reconstruct, manage and control the same and conduct the business thereof, and perform lessor's obligations under any lease affecting all or any part of the Mortgaged Property, and collect the rents, profits and income therefrom as the LENDER shall deem appropriate and to take any action with regard thereto as in the LENDER'S judgement is required by law. Upon every such entry, the LENDER may from time to time at the BORROWER'S expense make all such repairs, replacements, alterations, additions and improvements to the Mortgaged Property and the Personal Property as the LENDER may deem appropriate and may exercise all rights and powers of the BORROWER, either in the BORROWER'S name or otherwise as the LENDER may determine. Upon such entry, the LENDER may, at its option, pay and incur all expenses which the LENDER believes are necessary or appropriate for the holding and operating of the Mortgaged Property and the Personal Property, the conduct of any business thereon and the maintenance, repair, replacement, alteration, addition or improvement of the Mortgaged Property and the Personal Property, including without limitation

payments of taxes, assessments, insurance, wages of employees connected therewith or any business conducted thereon, charges and reasonable compensation for service of the LENDER, its attorneys and accountants and all other persons engaged or employed in connection therewith or any business conducted thereon. The LENDER, at its election, may make payments or incur liabilities with respect to obligations arising prior to the date it takes possession. The LENDER may add all obligations so paid or incurred to the Obligations to bear interest at the highest rate provided for in any of the Obligations applicable to amounts due after maturity or default and be secured by all Loan Documents equally and ratably with the Principal, interest thereon and all other Obligations, or deducted from the income or receipts of the Mortgaged Property or any business conducted thereon.

Nothing in this Mortgage shall be construed as obligating the LENDER to take any action or incur any liability with respect to the Mortgaged Property or the Personal Property or any business conducted thereon, and all elections given to the LENDER are for its benefit and shall be exercised in its sole discretion.

If any action or proceeding is commenced, including an action to foreclose this Mortgage and Security Agreement or any other Loan Document or to collect this debt hereby secured, to which the LENDER is made a party by reason of the execution of this Mortgage and Security Agreement or any other Loan Document or by reason of any obligation which is secured thereby, or by reason of entry or any other action under this Mortgage and Security Agreement or any other Loan Document, or if it becomes necessary in connection with the legal proceedings or otherwise to defend or uphold this Mortgage and Security Agreement or any other Loan Document or the lien(s) or security interest(s) hereby or thereby created or any act taken under this Mortgage and Security Agreement or any other Loan Document, all reasonable sums paid or incurred by the LENDER for the expense of any litigation or otherwise in connection with any rights created by this Mortgage and Security Agreement or any other Loan Document shall be paid by the BORROWER, or may at the LENDER'S election be added to the Obligations to bear interest at the highest rate provided for in any of Obligations applicable to amounts due after maturity or default and shall be secured by all Loan Documents equally and ratably with the Principal, interest thereon and all other Obligations.

The LENDER shall for further security, and in addition to all other rights, be subrogated to the lien, whether released of record or taken by LENDER by assignment, of any and all encumbrances on the Mortgaged Property or the Personal Property or any part thereof, to the extent satisfied or acquired by funds of the LENDER, whether paid out of the proceeds of the loan secured by this Mortgage and Security Agreement or otherwise.

This Mortgage is granted on the STATUTORY CONDITION and on the further condition that all covenants and agreements of the BORROWER contained herein and in every other Loan Document shall be kept and fully performed, for any breach of which the LENDER shall have the STATUTORY POWER OF SALE, and on the further

*condition that upon any default the LENDER shall have as to the Personal Property all the rights and remedies of a Secured Party under the Uniform Commercial Code as now in effect in the Commonwealth of Massachusetts, including the option to proceed as to both the Mortgaged Property and the Personal Property under the law relating to foreclosure of real estate mortgages, and such further remedies as from time to time may hereafter be provided in Massachusetts for a secured party.*

*All rights of the LENDER under this Mortgage as to the Personal Property and the Mortgaged Property may be exercised together or separately. In exercising its power of sale, the LENDER may sell the Personal Property or any part thereof, either separately from or together with the Mortgaged Property or any part thereof, either as one unit or in such separate units, all as the LENDER may in its discretion elect; and may sell the Mortgaged Property as one unit or parcel or in such separate units or parcels as LENDER may in its discretion elect; and may sell the Mortgaged Property or any part thereof either separately from or together with the whole or any part of other collateral which may constitute security for any obligation secured by the Mortgaged Property, also as the LENDER may in its discretion elect. In the event of any foreclosure sale the LENDER shall be entitled to retain on (1%) percent of the purchase price in addition to the costs, charges and expenses allowed under the Statutory Power of Sale and in addition to all amounts secured hereby. In the event of any separate sale of Personal Property, the LENDER will give the BORROWER reasonable notice of the time and place of any public sale or of the time after which any private sale or other intended disposition thereof is to be made. The requirement of reasonable notice shall be met if notice given as provided in this Mortgage and Security Agreement at least five (5) calendar days before this time of the sale or other disposition.*

*The BORROWER, to the fullest extent that the BORROWER may do so, hereby: (a) agrees that the BORROWER will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the Obligations; and (b) waives rights to a marshalling of the BORROWER'S assets, including the Mortgaged Property and Personal Property and to a sale in inverse order of alienation in the event of a sale hereunder of the Mortgaged Property or Personal Property, and agrees not to assert any right under any statue or rule of law pertaining to the marshalling of assets, sale in inverse order of alienation or other matters whatever to defeat, reduce or affect the right of the LENDER under the terms of this Mortgage and Security Agreement or the other Loan Documents to a sale of the Mortgage Property or Personal Property for the collection of the Obligations, without any prior or different resort for collection, or the right of LENDER to the payment of such indebtedness out of the proceeds of sale of the Mortgaged Property of Personal Property in preference to every other claimant whatever.*

7. *NOTICES*

Any demand, notice or request by either party to the other hereunder or any other *Loan Document* shall be sufficiently given if in writing delivered to the party intended to receive the same, or if mailed by certified mail addressed to such party, as to the *LENDER*, to its principal office from time to time, and as to the *BORROWER*, at the *BORROWER'S* Notice Address set forth on the signature page hereof, or to such other address as may be stated in a notice delivered or mailed herein provided.

8. *WAIVER*

No consent or waiver, express or implied by the *LENDER* to or of any default by the *BORROWER* shall be construed as a consent or waver to or of any other default at the same time or upon any future occasion.

9. *PARTIAL INVALIDITY*

In case any one or more of the provisions of this *Mortgage and Security Agreement* are held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof.

10. *BINDING OBLIGATIONS*

This *Mortgage and Security Agreement* shall insure to the benefit of and be binding upon the *BORROWER* and the *LENDER* and their respective representatives, successors and assigns. The terms "BORROWER" and "LENDER" shall include all subsequent holders of their respective rights, title and interest under this *Mortgage and Security Agreement.*

11. *FINANCING STATEMENT*

This *Mortgage and Security Agreement* is to be filed with the Registry of Deeds for the County in which the Mortgaged Property is located and shall be deemed, in addition to all other purposes serviced by such filing, to be a financing statement pursuant to Massachusetts General Laws, Chapter 106, Section 9-401.

12. *LOAN-TO-VALUE COVENANT*

At all times during the term of the Loan, the ratio (the "Loan-to-Value Ratio") of (i) the outstanding principal balance, plus any accrued but unpaid interest to (ii) the Appraised Value (as defined below) shall not exceed seventy percent (70%). The Appraised Value shall be the fair market value of the Property subject to build-out and lease-up at market rents as indicated by the appraisal obtained by the Bank at the time of the loan, or by any updated appraisal, which the Bank may from time to time obtain from a real estate appraiser licensed to do business in the Commonwealth of Massachusetts and acceptable to the Bank. Within thirty (30) days of written notice to Borrower of a

*violation of this covenant, Borrower shall either make a principal payment sufficient to reduce the Loan-to-Value Ratio to seventy percent (70%) or less or provide to Bank additional collateral, satisfactory in all respects to Bank in its sole discretion.*

*EXECUTED as a sealed instrument under Massachusetts Law this*

**BORROWERS:**
**ARCADIA ENTERPRISES, INC.**

PLES 3 ( THE-15.

**BY:  MICHAEL J. CIVITARESE**
*President & Treasurer*

**BORROWERS NOTICE:**
*8 CONDON WAY*
**HOPEDALE, MA 01747**

### COMMONWEALTH OF MASSACHUSETTS

*Plymouth, SS.*

*December 28, 2006*

*On this the 28th day of December, 2006, before me, the undersigned notary public, personally appeared MICHAEL J. CIVITARESE, proved to me through satisfactory evidence of identification which was a copy of a Mass. Drivers License, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its stated purpose, as President & Treasurer of Arcadia Enterprises, Inc.*

*Robert E. Galvin, Notary Public*
*My Commission Expires:  06/25/10*

## EXHIBIT "A"

The land in Hopedale, Worcester County, Massachusetts known as Lot 13 (the "Lot")
shown on the Definitive Subdivision Plan entitled "Plain Street Industrial Park," prepared
by Guerriere & Halnon, Inc., dated January 22, 2003, revised June 4, 2003, endorsed by
the Town of Hopedale Planning Board on June 18, 2003, containing six (6) sheets and
recorded with Worcester District Registry of Deeds (the "Registry") in Book 796, Page
91 (the "Plan").

ATTEST: WORC. Anthony J. Vigliotti, Register

EXHIBIT 2



# The Commonwealth of Massachusetts
## William Francis Galvin

## UCC Public Search Results

[?]

Help with Searching

Financing statements remain in this UCC information management system until at least one year after lapse.
To search lapsed filings, click here

## Search Criteria:

| | |
|---|---|
| **Search Type:** | Article 9 |
| **Normalized Name:** | ArcadiaEnterprises |
| **Organization Name:** | Arcadia Enterprises |
| **Organization City:** | INCLUDE ALL |
| **Organization State:** | INCLUDE ALL |
| **Start Date:** | INCLUDE ALL |
| **Include:** | DEBTORS, |

2 records matched your search criteria on page: 1 of: 1

| Name | Name Type | City | State | Filing Type | Filing Number | Original Filing Number | Filing Date |
|---|---|---|---|---|---|---|---|
| ARCADIA ENTERPRISES, INC | DEBTOR | BELLINGHAM | MA | UCC-1 | 200536812850 | 200536812850 | 2/24/2005 |
| ARCADIA ENTERPRISES, INC | DEBTOR | BELLINGHAM | MA | UCC-3 TERMINATION | 200863612640 | 200536812850 | 3/3/2008 |

Return to UCC Public Search

Corporations Division Home Page    Contact Us

Copyright 2006 Secretary of the Commonwealth of Massachusetts

LEGAL INFORMATION, DISCLAIMERS & POLICIES

# EXHIBIT 3

Bk: 40424 Pg: 132

Return to:  Robert E. Galvin, Esquire
10 Enterprise Street, Suite 3
Duxbury, MA 02332

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Robert E. Galvin, Esq. 781-934-5678

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Robert E. Galvin, Esquire
10 Enterprise St., Ste. 3
Duxbury, Massachusetts 02332

Bk: 40424 Pg: 132  Doc: F8
Page: 1 of 2  12/28/2006 01:54 PM

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Arcadia Enterprises, Inc. | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| Civitarese | Michael | | J. | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8 Condon Way | Hopedale | MA | 01747 | USa |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION Massachusetts | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SCITUATE FEDERAL SAVINGS BANK | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 72 FRONT STREET | SCITUATE | MA | 02066 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All personal property of the debtor respecting that certain parcel of land located at the address listed below and the structures and improvements now or hereafter thereon located, as more particularly described in Exhibit A attached hereto (the "Property"), together with: (i) all rights now or hereafter existing, belonging or pertaining thereto; (ii) all goods, furniture, machinery, equipment, fixtures, accounts, contract rights, documents, instruments, proceeds of insurance, general intangibles and other items of personal property of the Debtor or in which it has an interest, now owned or hereafter acquired, that are located on or used in connection with the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking respecting the Property, (iv) all of the rights and benefits of Debtor under any present or future leases and agreements relating to the Property, or the use or occupancy thereof together with any extensions and renewals thereof; and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

8 Condon Way, Hopedale, Massachusetts 01747

For title see BK 35415 Pg 290

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)    International Association of Commercial Administrators (IACA)

1 of 1
1/21/2010 8:43 AM

Property Address:  8 Condon Way, Hopedale, MA 01747



2008 00193305
Bk: 40424 Pg: 127  Doc: ASM
Page: 1 of 5  12/28/2008 01:54 PM

EXHIBIT 4

# ASSIGNMENT OF LEASES AND RENTALS

This Assignment (the "Assignment") is made on December 28, 2006 by and between ARCADIA ENTERPRISES, INC., ("Borrower"), with an address of 8 CONDON WAY, HOPEDALE, MA 01747, and Scituate Federal Savings Bank, organized and existing under the law of the United States of America, with a place of business at 72 Front Street, Scituate, MA 02066 ("Lender").

1. <u>DEFINITIONS.</u>   As used herein, the following terms shall have the following meanings:

   (a) <u>GUARANTY.</u>   {IF THE ASSIGNMENT SECURES A GUARANTY}"
   NOT APPLICABLE

   (b) <u>Leases:</u>  Any and all leases, subleases, use and occupancy agreements, rental agreements, licenses, concessions, or grants of other possessory interests, as they may be renewed or extended, now or hereafter existing or in force and effect, oral or written, with respect to, covering or affecting the Mortgaged Property, or any portion thereof, together with all rights, powers, privileges, options and other benefits of Borrower thereunder.

   (c) <u>LOAN:</u>  The Loan (the "Loan") of up to **$420,000.00** by the Lender to the Borrower.

   (d) <u>MORTGAGE:</u>  The Mortgage and Security Agreement dated **December 28, 2006** and to be recorded herewith, granted by Borrower to Lender with respect to the Mortgaged Property. BK 46424 PG 109

   (e) <u>MORTGAGED PROPERTY</u>:  The "Mortgaged Property", 8 Condon Way, Hopedale, Massachusetts, as defined in Mortgage.

   (f) <u>NOTE</u>:  {IF THE ASSIGNMENT SECURES A NOTE}:  The promissory note dated **December 28, 2006** in the principal amount of **$420,000.00** given by Borrower to the order of Lender and secured by the Mortgage, together with all extensions, renewals, modifications and amendments thereof.

   (g) <u>RENTS:</u>  All of the rents, revenues, income, profits, deposits, tenders and other benefits payable under the Lease and/or arising from the use or occupancy of all or any portion of the Mortgaged Property.

   (h) <u>SECURITY DOCUMENTS:</u>  This Agreement, the Mortgage, and all other documents now or hereafter securing the payment and the observance, performance and discharge of the Obligations (as defined herein below) together with the Note (the Guaranty), as it may be amended, extended or renewed.

2. <u>GRANT:</u>   For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Borrower assigns to the Lender, its successors and assigns, all of Borrower's right, title and interest in and to the Leases and the Rents.

3. <u>SECURITY:</u>   This Assignment secures the following: (i) the payment of the principal under the Note {Guaranty}, together with interest and all other charges evidenced by the Note {the Guaranty}, as  same may be amended, renewed or extended; (ii) payment of all other sums becoming due and payable to the Lender under this Assignment and all of the other Security Documents; and (iii) performance of all obligations, covenants and agreements of the Borrower

Return to:   Robert E. Galvin, Esquire
             10 Enterprise Street, Suite 3
             Duxbury, MA 02332          1

to the Lender contained in the Note (the Guaranty) and all of the other Security Documents (all of the foregoing being referred to in this Assignment collectively as the "Obligations").

4. <u>WARRANTY</u>:    The Borrower warrants that the Borrower is the sole owner of the entire lessors interest in the Leases, including without limitation all rights in and to the Rents and all other amounts due or to become due to lessor thereunder, that no rent reserved in the Leases has been assigned or anticipated except as assigned herein or previously disclosed to the Lender in writing, and that the tenants under the Leases are not in default in any material respect under any of the Leases, and that the Borrower has duly performed, in all material respects, all of its obligations under the Leases.

5. <u>COVENANTS</u>:    The Borrower covenants with the Lender: (i) to observe and perform all the obligations imposed upon the lessor under each of the Leases and not to do or permit to be done anything to impair the security thereof; (ii) not to collect any of the Rents more than one month in advance of the time when the same shall become due; (iii) not to execute any other assignment of the lessor's interest in the Leases or in  the rents; (iv) not to reduce the rent or the term, or otherwise alter, modify or change the terms or conditions of the Leases so as to impair their value as security, or cancel or terminate any Lease or accept a surrender thereof or enter into any new lease of any part of the Mortgaged Property, without the Lender's prior of any part of the Mortgaged Property, without the Lender's Prior written consent on each occasion;  and (v) to execute and deliver all such further assurances and assignments with respect to the Mortgaged Property and the Leases as the Lender from time to time requires. The Borrower warrants and represents to the Lender that the rent roll delivered to the Lender in connection with this Assignment (and any updated rent rolls delivered to the Lender at any time during which any of the obligations remain outstanding is true, accurate, and complete in all material respects, and Borrower acknowledges and agrees that the foregoing representation and warranty is being relied upon by, and is a material inducement to, the Lender in making the Loan.

The Borrower further covenants and agrees with the Lender that the Borrower will deliver to Lender, at such time or times as Lender may require, but no less often than annually, a certified rent roll for the Mortgaged Property, satisfactory in form and content to the Lender, containing such information as may be required by Lender. The Borrower covenants and agrees with Lender that the most recent certified rent roll delivered to Lender will be true , accurate and complete, and can be conclusively relied upon by Lender until such time as Borrower delivers to Lender a subsequent certified rent roll.

6. <u>CONDITIONS</u>:    This Assignment is made on the following terms and conditions:

(a) The Borrower hereby authorizes the Lender or Lender's agents to collect the Rents and hereby directs each tenant under the Leases to pay such Rents to the Lender or the Lender's agents; provided, however, that so long as the Borrower is not in default beyond any applicable grace period in the payment of principal, interest or other charges due under the Note, or any other indebtedness secured by any of the Security Documents or in the payment or performance of any of the other Obligations, the Borrower shall have the right to collect (not more than one month in advance) all of the Rents as trustee for the benefit of the Lender and the Borrower, to apply the Rents so collected to the sums secured by this Assignment, the Note, the Mortgage or any other document or instrument taken as security for the Note, with the balance, so long as no breach has occurred, to the account of the Borrower, it being intended by Lender and Borrower that this Assignment constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any provision of this Assignment, the Note, the Guaranty, or the Security Documents, and without the necessity of the Lender entering upon and taking and maintaining full control of the Mortgaged Property in person., by agent, or by a court appointed receiver, Lender shall immediately be entitled to possession of all the Rents and all such Rents that come into the

2

possession of the Borrower after delivery of such notice shall be held by the Borrower as trustee for the benefit of the Lender only.

(b) Upon or at any time after default beyond any applicable grace period in the payment of the principal interest or other charges due under the Note or Guaranty, or any other indebtedness secured by any of the Security Documents, or in the payment or performance of any of the other Obligations, the Lender may, at its option, without notice, without regard to the adequacy of other security for the Obligations and without in any way waiving such default, either in person or by agent, with or without bringing any action or proceedings for foreclosure of the Mortgage or otherwise, or by a receiver appointed by a court, take possession of the Mortgaged Property and lease and operate the same on such terms and for such period of time as the Lender may deem proper and, either with or without taking possession of the Mortgaged Property, in its own name or in the Borrower's name, sue for or otherwise collect and receive all of the Rents, with full power to make all alterations, renovations, repairs and replacements to the Mortgaged Property as may seem proper to the Lender from time to time, and to apply the Rents in such order of priority as the Lender in its sole discretion may determine, any statute, law, custom or use to the contrary notwithstanding, to the payment of.:

    (i)    all expenses of managing the Mortgaged Property, including without limitation the salaries, fees and wages of a managing agent and such other employees as the Lender deems necessary or desirable, all expenses of operating and maintaining the Mortgaged Property, including without limitation all taxes, charges, claims, assessments, water rents, sewer rents and other liens, and premiums for all insurance which the Lender may deem necessary or desirable, all expenses of performing the lessor's obligations under the Leases, including without limitation the payment or refund of security deposits and interest due thereon, all expenses of alterations, renovations, repairs or replacements to the Mortgaged Property and all expenses incident to taking and retaining possession of the Mortgaged Property; and

    (ii)    the Obligations:

The Lender's exercise of the right to collect the Rents shall not be considered a waiver by the Lender of any default in any of the Obligations.

(c) The Borrower hereby authorizes and directs all lessees and occupants of the Mortgage Property, upon receipt from the Lender of written notice to the effect that the lender is then the holder of the Note and that a default exists as described herein, to pay over to the Lender all rents, income and profits accruing under the Leases and from the Mortgaged Property and to continue to do so until otherwise notified by the Lender.

(d) Nothing contained in this Assignment, and no act done or omitted by the Lender pursuant to the powers and rights granted it hereunder, shall be deemed to be a waiver by the Lender of its rights and remedies under the Note, the Guaranty or the other Security Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Lender under the terms of the Note, the Guaranty or the other Security Documents.

The Lender's right to collect the principal, interest and other charges and all of the other obligations and to enforce any other security therefor all may be exercised by the Lender either prior to, simultaneously with or subsequent to any action taken under this Assignment.

(e) This Assignment is granted solely to secure the payment and performance of all of the Obligations and shall not operate to place responsibility for the control, management or repair of

3

the Mortgaged Property upon the Lender, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make the Lender responsible or liable for any waste committed on the Mortgaged Property by tenants or any other parties, or for any dangerous or defective condition of the Mortgaged Property or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss, injury or death to any tenant, licensee, employee or strangers

(f) The Lender shall not be liable for any loss sustained by the Borrower resulting from the Lender's failure to rent the Mortgaged Property, or from performing lessor's obligations under the Lease or from any other act or omission of the Lender in managing the Mortgaged Property unless such loss is caused by the Lender's willful misconduct and bad faith. The Lender shall not be obligated to perform or discharge, nor does the Lender undertake to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment, and the Borrower indemnities the Lender for , and holds the Lender harmless from, any and all liability, loss or damage which the Lender may incur under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against the Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases.    Should the Lender incur any such liability under the Leases or under or by reason of this Assignment or in defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured by this Assignment and the Borrower shall reimburse the Lender therefor immediately upon demand and upon the failure of the Borrower so to do, the Lender may, at its option, declare all sums secured hereby immediately due and payable.

7. NOTIFICATION:  The Borrower shall with reasonable promptness, but in any event within five (5) business days after the Borrower has knowledge thereof, notify the Lender in writing of the occurrence of any act, event or condition which constitutes or (except for monetary obligations not yet due) which after notice or passage of time or both, would constitute a default under this Assignment or under any other of the Security Documents.

8. TERMINATION:  Upon payment in full to the Lender of the principal and interest and other charges due under the Note and all other indebtedness secured by the Security Documents, the discharge of the Note and the Mortgage and the satisfaction in the full of the Obligations, this Assignment shall be void and of no further effect, but the affidavit, certificate, letter or statement of any officer, agent, or attorney of the Lender asserting that any of such indebtedness remains unpaid shall be and constitute conclusive evidence that the Assignment is still in force and effect and any person may, and is hereby authorized to rely thereon.

9. NOTICES:        Any demand, notice or request by either party to the other hereunder or under any of the other Documents shall be sufficiently given if in writing delivered to the party intended to receive the same, or if mailed by certified mail addressed to such party, at the address stated hereinabove, or to such other address as may be stated in a notice delivered or mailed as herein provided.

10. PARTIES:        This Assignment shall insure to the benefit of, and be binding on, the Borrower and the Lender and their respective successors and assigns.

11. LAW:        This Assignment shall be governed by and constructed according to the laws of the Commonwealth of Massachusetts.

4

This Assignment is executed as a sealed instrument under Massachusetts law.

BORROWER:

ARCADIA ENTERPRISES, INC.

Witness:
Robert E. Galvin, Esquire

BY:  MICHAEL J. CIVITARESE
President & Treasurer

## COMMONWEALTH OF MASSACHUSETTS

Plymouth, SS.

December 28, 2006

On this the 28th day of December, 2006, before me, the undersigned notary public, personally appeared MICHAEL J. CIVITARESE, proved to me through satisfactory evidence of identification which was a copy of Mass. Drivers Licenses, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its stated purpose, as President and Treasurer of ARCADIA ENTERPRISES, INC.

Robert E. Galvin, Notary Public
My Commission Expires:  06/25/10

5

ATTEST: WORC. Anthony J. Vigliotti, Register

Bk: 40424 Pg: 123  Doc: ASM
Page: 1 of 4  12/28/2006 01:54 PM



## ASSIGNMENT OF PERMITS, LICENSES AND APPROVALS

**DEFINITIONS:**

BORROWER:       **ARCADIA ENTERPRISES, INC., of 8 Condon Way,
                Hopedale, MA 01747 Mortgagor;**

LENDER:         **SCITUATE FEDERAL SAVINGS BANK of 72 Front
                Street, Scituate, MA 02066, as Mortgagee;**

MORTGAGE:       The Mortgage dated December 28, 2006 covering
                the premises located at **8 Condon way,
                Hopedale, MA 01747** (see Exhibit A" attached
                hereto) as Mortgagee; See BK 40424 Pg 108

NOTE:           The Note from ARCADIA ENTERPRISES, INC. in
                the amount of $420,000.00 and secured by the
                Mortgage.

MORTGAGED
PREMISES:       The land and improvements thereon
                located on 8 Condon Way, Hopedale, MA
                and subject to the Mortgage.

PLACE OF
EXECUTION:10 Enterprise St., Ste. 3, Duxbury, MA 02332

    In consideration of Lender's making the loan evidenced
by the Notes, in order further to secure the payment of the
indebtedness of Borrower to Lender, Borrower does hereby
sell, assign, transfer, and set over unto Lender all of the
rents, issues and profits of the Mortgaged Premises, this
Assignment to become operative upon any default being made
by Borrower under the provisions of the Mortgage or the
Notes, and to remain in full force and effect so long as any
such default continues to exist.

    In furtherance of the foregoing assignment, Borrower
hereby authorizes Lender, after the occurrence of a default
as aforesaid, to enter upon the Mortgaged Premises and to
collect, in the name of Borrower or in its own name as
assignee, the rents accrued but unpaid and in arrears at the
date of such default, as well as the rents thereafter
accruing and becoming payable during
the period of the continuance of the said or any other
default; and to this end, Borrower further agrees that
Borrower will facilitate in all reasonable ways Lender's
collection of said rents, and will, upon request by Lender,
execute a written notice to each tenant directing the tenant
to pay rent to Lender.

Return to:   Robert E. Galvin, Esquire
             10 Enterprise Street, Suite 3
             Duxbury, MA 02332

1

In addition, after the occurrence of a default under the terms of the Note and Mortgage and Security Agreement, the Borrowers shall assign all plans, permits, licenses and approvals from the **Town of Hopedale** to the Lender.

Borrower also hereby authorizes Lender upon such entry, at its option, to take over and assume the management, operation and maintenance of the Mortgaged Premises and to perform all acts necessary and proper and to expend such sums out of the income of the Mortgaged Premises as may be needful in connection therewith, in the same manner and to the same extent as Borrower theretofore might do, including the right to effect new leases, to cancel or surrender existing leases, to alter or amend the terms of existing leases, to renew existing leases, or to make concessions to tenants; Borrower hereby releases all claims against Lender arising out of such management, operation and maintenance, excepting the liability of Lender to account as hereinafter set forth.

Borrower hereby authorizes and directs each tenant of any part of the Mortgaged Premises upon receipt from Lender of written notice that Lender is then the holder of the Notes and the Mortgage and that a default exists thereunder, to pay to Lender all rents then and thereafter payable, without any obligation on the part of the tenant to inquire as to the truth of the statements made in said notice.

Lender shall, after payment of all proper charges and expenses, including reasonable compensation to such managing agent as it shall select and employ, and after the accumulation of a reserve to meet taxes, assessments, water rents, and fire and liability insurance in requisite amounts, credit the net amount of income received by it from the Mortgaged Premises by virtue of this Assignment, to any amounts due and owing to it under the provisions of the Mortgage and the Notes, but the manner of the application of such net income and the items to be credited shall be determined in the sole discretion of Lender. Lender shall not be accountable for more moneys than it actually receives from the Mortgaged Premises, nor shall it be liable for failure to collect rents. Lender shall reserve the right to determine the method of collection and the extent to which enforcement of collection of delinquent rents shall be prosecuted.

In the event, however, that Borrower shall reinstate the mortgage loan completely in good standing, having complied with all of the provisions of the Mortgage and the Notes, then Lender, within one (1) month after demand in writing, shall re-deliver premises possession of the Mortgaged premises to Borrower, who shall remain in possession unless and until another default occurs, at which

time Lender may, at its option, again take possession of the Mortgaged Premises under authority of this Assignment.

Borrower hereby warrants to Lender that there is not outstanding any prior assignment or pledge of any rents of the Mortgaged premises, nor any prior assignment or pledge of landlord's interest in any lease of the whole or any part of the Mortgaged Premises. Borrower also agrees not to collect any rents of the Mortgaged Premises in advance, other than as required to be paid in advance by the provisions of any rental agreement, and further agrees not to do any other act which would destroy or impair the benefits to Lender of this Assignment.

It is not the intention of the parties hereto that an entry by Lender upon the Mortgaged Premises under the provisions of this Assignment shall constitute Lender a "mortgage in possession" in contemplation of law, except at the option of Lender.

This Assignment shall remain in full force and effect as long as the indebtedness to Lender under the Notes and the Mortgage remains unpaid in whole or in part.

The provisions of this Assignment shall be binding upon Owner and his or its legal representatives, successors or assigns and upon Lender and its successors or assigns. The word "Owner" shall be construed to mean any one or more persons or parties who are holders of the legal title or equity of redemption to or in the aforesaid Mortgaged Premises.

It is understood and agreed that a full and complete release of the Mortgage shall operate as a full and complete release of all Lender's rights and interest hereunder, and that after the Mortgage has been fully released this Assignment shall be void and of no further effect.

IN WITNESS WHEREOF, Borrower has executed this Assignment in manner and form proper and sufficient in law as of the 28th day of December, 2006.

BORROWER:

ARCADIA ENTERPRISES, INC.

BY:   MICHAEL J. CIVITARESE
President & Treasurer

3

## COMMONWEALTH OF MASSACHUSETTS

Plymouth, SS.

December 28, 2006

On this the 28th day of December, 2006, before me, the undersigned notary public, personally appeared MICHAEL J. CIVITARESE, proved to me through satisfactory evidence of identification which was a copy of Mass. Drivers Licenses, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its stated purpose, as President and Treasurer of ARCADIA ENTERPRISES, INC.

Robert E. Galvin, Notary
My Commission Expires:6/25/10

4

ATTEST: WORC. Anthony J. Vigliotti, Register

**Arcadia Enterprises Inc**
**30 Day budget**
    **Thursday, January 21, 2010**

  Exhibit 6

**Rental income:**

| | | |
|---|---:|---:|
| Arcadia Excavation | 500 | |
| VE Enterprises Inc | 1,250 | |
| Zenone Corp | 2,000 | 3,750 |

**Expenditures:**

| | | |
|---|---:|---:|
| Internet | 100 | |
| Insurance | 434 | |
| Misc. Office and building | 200 | |
| Real estate taxes | 369 | |
| Telephone | 88 | 1,191 |

| | | |
|---|---:|---:|
| Projected net cash flow | | 2,559 |